Jesse D. Franklin-Murdock (SBN: 339034)
**SWEIGART MURDOCK, LLP**
1160 Battery Street, Suite 100
San Francisco, California 94111
Telephone: (415) 873-0123
Facsimile: (873) 890-0791
Email: Jesse@sm-llp.com

Attorney for Defendant Jeff Tarzia

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALYSSA MERCANTE,<br>Plaintiff,<br>v.<br>JEFF TARZIA,<br>Defendant. | Case No. 3:26-cv-05924-H-VET<br><br>**DEFENDANT JEFF TARZIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE THIRD AMENDED COMPLAINT AND FOR ATTORNEY'S FEES UNDER N.Y. CIVIL RIGHTS LAW § 70-a**<br><br>Judge: Hon. Marilyn L. Huff<br>Courtroom: 12A<br>Hearing Date: January 25, 2027<br>Time: 10:30 a.m. |

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. The Parties and the Controversy ..... 2

B. The Two Statements ..... 2

C. The Remaining Claims ..... 3

D. Procedural History ..... 3

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 4

A. New York Law Governs, Including Its Anti-SLAPP Statute ..... 4

B. The Defamation Count Fails ..... 5

1. The Tweet Is a Vulgar Rhetorical Question, Not a Statement of Fact ..... 5

2. The YouTube Statement Is Substantially True on the TAC's Own Allegations ..... 6

3. The TAC Does Not Plausibly Allege Knowing or Reckless Falsity ..... 7

C. The Remaining Counts Are the Defamation Claim Without Its Elements ..... 7

1. Section 79-n ..... 8

2. Intentional Infliction of Emotional Distress ..... 9

3. Tortious Interference with Contract ..... 10

4. "Stochastic Terrorism" and Prima Facie Tort ..... 10

D. Mr. Tarzia Is Entitled to His Fees Under Civil Rights Law § 70-a ..... 11

1. Section 70-a Applies Here and Supports an Award on This Motion ..... 11

2. The Action Was Commenced and Continued Without a Substantial Basis ..... 11

3. The Record Since Filing Shows How the Action Has Been

Continued ........................................................................ 12
4. Reservation of Claims Under § 70-a(1)(b) and (c) ........................ 13
E. Alternatively, California's Anti-SLAPP Statute Requires the Same Result ........................................................................ 13
F. Dismissal Should Be with Prejudice ........................................................ 14
V. CONCLUSION ........................................................................ 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26 (1st Dep't 2022) ........ 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 4, 7

*Bacon v. Nygard*, 140 A.D.3d 577 (1st Dep't 2016) ........ 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 4

*Biro v. Condé Nast*, 807 F.3d 541 (2d Cir. 2015) ........ 7

*Bobulinski v. Tarlov*, 758 F. Supp. 3d 166 (S.D.N.Y. 2024) ........ 11, 12

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ........ 8

*Brian v. Richardson*, 87 N.Y.2d 46 (1995) ........ 5

*Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314 (1983) ........ 10

*Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022) ........ 11

*Counterman v. Colorado*, 600 U.S. 66 (2023) ........ 8

*Exec. Park Partners LLC v. Benicci Inc.*, 2023 WL 3739093 (S.D.N.Y. May 31, 2023) ........ 11

*Fleischer v. NYP Holdings, Inc.*, 104 A.D.3d 536 (1st Dep't 2013) ........ 8

*Freihofer v. Hearst Corp.*, 65 N.Y.2d 135 (1985) ........ 10, 11

*Ganske v. Mensch*, 480 F. Supp. 3d 542 (S.D.N.Y. 2020) ........ 6

*Golan v. Daily News, L.P.*, 214 A.D.3d 558 (1st Dep't 2023) ........ 11

*Goldman v. Barrett*, 733 F. App'x 568 (2d Cir. 2018) ........ 8

*Gopher Media LLC v. Melone*, 154 F.4th 696 (9th Cir. 2025) (en banc) ........ 14

*Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6 (1970) ........ 5

*Gross v. N.Y. Times Co.*, 82 N.Y.2d 146 (1993) ........ 5

*Harris v. Am. Accounting Ass'n*, 2021 WL 5505515 (N.D.N.Y. Nov. 24, 2021), *aff'd in part, rev'd in part*, 2023 WL 2803770 (2d Cir. Apr. 6, 2023) ........ 11

*Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136 (S.D.N.Y. 2022) ........ 6

*Howell v. N.Y. Post Co.*, 81 N.Y.2d 115 (1993) ........ 9

*Hustler Mag., Inc. v. Falwell*, 485 U.S. 46 (1988) ........ 7

*Karam v. County of Rensselaer*, No. 1:13-cv-01018 (MAD/DJS), 2016 WL 51252 (N.D.N.Y. Jan. 4, 2016) ... 9

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ... 14

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ... 4

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (1996) ... 10

*Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504 (S.D.N.Y. 2013) ... 9

*LaNasa v. Stiene*, No. 24-1325, 2025 WL 893456 (2d Cir. Mar. 24, 2025) ... 6

*Le v. Triza Elec. Corp.*, No. 19-cv-5134 (ARR) (PK), 2020 WL 1274977 (E.D.N.Y. Mar. 16, 2020) ... 9

*Lee v. Bankers Tr. Co.*, 166 F.3d 540 (2d Cir. 1999) ... 4

*Mann v. Abel*, 10 N.Y.3d 271 (2008) ... 4

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496 (1991) ... 6

*Mercante v. Tarzia*, No. 24-CV-8471 (MKB), 2025 WL 3073739 (E.D.N.Y. Nov. 4, 2025) ... 4

*Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453 (1967) ... 8

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ... 8

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264 (1974) ... 6

*People v. Dietze*, 75 N.Y.2d 47 (1989) ... 9

*People v. Golb*, 23 N.Y.3d 455 (2014) ... 9

*Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) ... 6

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) ... 14

*Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10 (1st Dep't 2024) ... 12

*Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016) ... 4, 13

*Satanic Temple, Inc. v. Newsweek Digital LLC*, 177 F.4th 202 (2d Cir. 2026) ... 5, 7, 11

*Snyder v. Phelps*, 562 U.S. 443 (2011) ... 8

*Steinhilber v. Alphonse*, 68 N.Y.2d 283 (1986) ... 4, 5

*Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114 (2d Cir. 1994) ... 10

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) .......... 4

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) .......... 14

**Statutes** **Page(s)**

28 U.S.C. § 1404(a) .......... 4

Cal. Civ. Proc. Code § 425.16 .......... 13, 14

N.Y. Civ. Rights Law § 70-a .......... *passim*

N.Y. Civ. Rights Law § 76-a .......... *passim*

N.Y. Civ. Rights Law § 79-n .......... *passim*

N.Y. Penal Law § 240.25 .......... 8

**Rules** **Page(s)**

Fed. R. Civ. P. 12(b)(6) .......... 3, 11, 12, 14

Fed. R. Evid. 408 .......... 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Jeff Tarzia is a San Diego video-game commentator. Plaintiff Alyssa Mercante is a former senior editor at Kotaku, a gaming website that, as the Third Amended Complaint ("TAC") describes it, has for a decade been at the center of the gaming culture's loudest public quarrel. In March 2024, in the middle of a controversy the TAC itself calls "Gamergate 2.0," Mr. Tarzia wrote two crude things about Plaintiff: a one-line rhetorical question on X, and a remark in a YouTube video that she had "come forward stating that she used to be a sex worker." Plaintiff sued over those two statements in December 2024. Nearly two years, four complaints, and a transfer later, they remain the only statements in this case alleged to be false and defamatory.

The defamation count fails on the TAC's own allegations. The tweet is a vulgar rhetorical question posted in an online exchange about the word "whorification," and the TAC concedes that the part of it Plaintiff does not sue over is opinion. The YouTube remark accurately describes what Plaintiff herself had published three months earlier, in a tweet the TAC quotes, saying she would "go back to sex work" because "at least then when I get fucked a lot I'll get paid well for it." Plaintiff now says she was joking. Perhaps she was. A statement that Plaintiff said something she did say is not false.

The other four counts—bias-related harassment under New York Civil Rights Law § 79-n, intentional infliction of emotional distress, tortious interference with contract, and a cause of action for "stochastic terrorism" supported by nothing but a Washington default judgment—are the defamation claim with its elements removed. They seek to hold Mr. Tarzia liable for criticizing Plaintiff's journalism, for how often he did it, and for the conduct of strangers on the internet who read it. The First Amendment does not permit that, and New York law does not provide for it.

Because every claim arises from public communications on an issue of public interest, New York's anti-SLAPP statute governs, and Mr. Tarzia is entitled to his fees under Civil Rights Law § 70-a(1)(a). The record of how this action has been continued

bears directly on that question. After jurisdictional discovery, Plaintiff offered to end the case if Mr. Tarzia would publish an apology in terms she dictated, agree "never to talk about Ms. Mercante again," and pay a sum equal to what he had paid his lawyer. Her counsel warned that otherwise his private materials would become part of a third amended complaint. He declined, and they did. That is the kind of litigation § 70-a was written to deter.

## II. BACKGROUND

### A. The Parties and the Controversy

Plaintiff, a New York resident, was a senior editor at Kotaku and has written for a number of other publications. TAC ¶¶ 3, 33, 129–130. By her own account she is "not a demure, wilting flower" but "bold, brassy, and opinionated" on social media. *Id.* ¶ 131. Mr. Tarzia, a California resident, publishes commentary on video games and gaming culture "from a generally right-of-center to conservative point of view" on YouTube, on X, and on his website. *Id.* ¶¶ 34, 136–143. Kotaku has been a target of criticism since the 2014 controversy known as Gamergate, and in early 2024 a dispute over the influence of a narrative consulting firm on video-game content, which its participants called "Gamergate 2.0," returned it to the center of that debate. *Id.* ¶¶ 1–2, 121–128, 147–166. Plaintiff wrote about the dispute for Kotaku; Mr. Tarzia criticized her article and Kotaku's coverage. *Id.* ¶¶ 14–16, 148–166. The TAC acknowledges that much of his content about her was "hyperbolic, vitriolic, incorrect, conspiratorial, paranoid, juvenile, and crass, but lawful." *Id.* ¶ 18.

### B. The Two Statements

The defamation count rests on two statements. TAC ¶¶ 506–507. On March 30, 2024, Mr. Tarzia posted on X: "'Whorification'? What's that? Like what @alyssa_merc does sucking dicks in her off time for money?" *Id.* ¶¶ 208, 506. Plaintiff disclaims any claim based on the first half of that sentence, which she concedes is "(1) opinion and (2) is not, in context, a statement about or concerning Plaintiff." *Id.* ¶ 506 n.105; *see id.* ¶ 208 n.52. On April 1, 2024, in a YouTube video, Mr. Tarzia said that Plaintiff "has since

come forward stating that she used to be a sex worker, sucking dicks for money before working at Kotaku." *Id.* ¶¶ 241, 507. The TAC alleges republication of the same claim on his website and in later videos. *Id.* ¶¶ 224, 246–247, 511, 514.

The TAC pleads two of Plaintiff's own posts on the subject. On December 21, 2023, three months before either statement, Plaintiff posted that she would "go back to sex work" because "at least then when I get fucked a lot I'll get paid well for it," followed by a laughing emoji. *Id.* ¶ 517. On April 6, 2024, she answered another user's question, "How did you get into the gaming industry?" with "I sucked dick." *Id.* ¶ 249. The TAC characterizes the first post as "obviously a joke" and the second as a humorous attempt at mitigation. *Id.* ¶¶ 253, 518–521.

### C. The Remaining Claims

The four remaining counts rest on the same body of commentary. The § 79-n count alleges that Mr. Tarzia selected Plaintiff for harassment, on information and belief, because of her "race, color, gender, age, and/or sexual orientation." TAC ¶¶ 531–537. The emotional-distress count alleges that his content led third parties to send Plaintiff threats and abuse. *Id.* ¶¶ 538–548. The tortious-interference count alleges that third parties complained to Kotaku's parent company about Plaintiff's appearance with another streamer, after which she "agreed to resign" and her contract was "bought out." *Id.* ¶¶ 379–380, 549–560. The fifth count asks the Court to recognize a new tort of "stochastic terrorism," relying on a default judgment entered by a Washington trial court, or in the alternative to find a prima facie tort. *Id.* ¶¶ 561–594 & n.110. It expressly "does not seek any damages for injury to reputation, or from the falsity of Tarzia's statements." *Id.* ¶ 564.

### D. Procedural History

Plaintiff filed this action in the Eastern District of New York on December 11, 2024, and amended her complaint twice. Mr. Tarzia moved to dismiss the Second Amended Complaint for lack of personal jurisdiction and, alternatively, under Rule 12(b)(6), and sought fees under § 70-a. The court denied the jurisdictional motion without

prejudice and ordered jurisdictional discovery without reaching the merits. *Mercante v. Tarzia*, No. 24-CV-8471 (MKB), 2025 WL 3073739 (E.D.N.Y. Nov. 4, 2025). During that discovery, on March 24, 2026, Plaintiff's counsel sent the settlement proposal now on the public docket at ECF No. 79-1. On July 7, 2026, Plaintiff filed the TAC with Mr. Tarzia's consent, under a stipulation that reserved all of his defenses. ECF No. 105. The parties then agreed to transfer the case to this District under 28 U.S.C. § 1404(a), and it was received here on October 16, 2026. ECF Nos. 114, 118, 119.

## III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts well-pleaded facts as true but not legal conclusions, and where the facts alleged are "merely consistent with" liability, or an "obvious alternative explanation" appears on the face of the complaint, the claim is not plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 682 (2009). The Court may consider documents incorporated by reference, including the social media posts the TAC quotes and relies on. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Whether a statement is reasonably susceptible of a defamatory meaning, and whether it is fact or opinion, are questions of law for the Court. *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008); *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986).

## IV. ARGUMENT

### A. New York Law Governs, Including Its Anti-SLAPP Statute

After a transfer under § 1404(a), the transferee court applies the choice-of-law rules of the transferor forum. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *Sarver v. Chartier*, 813 F.3d 891, 897 (9th Cir. 2016) (applying transferor state's rules after § 1404(a) transfer). New York's rules point to the law of the state of the plaintiff's domicile in a multistate defamation case. *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999). Plaintiff lives in New York, pleads every count under New York law, and invokes New York statutes for her per se theory, her harassment claim, and her request for fees. TAC

¶¶ 33, 528, 534–537, 562, 568–569 & Prayer ¶ 5. There is no dispute that New York law supplies the rule of decision.

New York's anti-SLAPP statute is part of that law. Section 76-a requires a plaintiff in "an action involving public petition and participation" to establish by clear and convincing evidence that the communication at issue was made with knowledge of its falsity or reckless disregard of whether it was false, wherever truth or falsity is material. N.Y. Civ. Rights Law § 76-a(2). The Second Circuit held this year that § 76-a is substantive and applies in diversity, and that it applies whether or not the plaintiff is a public figure. *Satanic Temple, Inc. v. Newsweek Digital LLC*, 177 F.4th 202, 211–12 (2d Cir. 2026). An action involving public petition and participation includes any claim based on "any communication in a place open to the public or a public forum in connection with an issue of public interest," and "public interest" must be "construed broadly" to mean "any subject other than a purely private matter." N.Y. Civ. Rights Law § 76-a(1)(a)(1), (1)(d). X and YouTube are public forums, and the TAC devotes more than a hundred paragraphs to describing the public controversy over Kotaku and "Gamergate 2.0" in which the statements were made. TAC ¶¶ 1–32, 121–201. Every count rests on those communications. This is an action involving public petition and participation, and the TAC's argument that Plaintiff is not a public figure, *id.* ¶¶ 384–388, is beside the point.

## B. The Defamation Count Fails

### 1. The Tweet Is a Vulgar Rhetorical Question, Not a Statement of Fact

New York protects expressions of opinion, including "rhetorical hyperbole" and "vigorous epithet[s]," and asks whether, in light of the full context of the communication and its setting, a reasonable reader would understand the statement as one of fact. *Steinhilber*, 68 N.Y.2d at 291–94; *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152–53 (1993); *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995); *see Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970). Context includes the medium. Courts have "emphasized the generally informal and unedited nature" of internet communications,

which leads readers "to give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 553 (S.D.N.Y. 2020) (cleaned up). Mere insults are not actionable. *LaNasa v. Stiene*, No. 24-1325, 2025 WL 893456, at *3 (2d Cir. Mar. 24, 2025) (summary order).

The March 30 tweet is a single sentence, phrased as a question, posted on X in an online exchange about the word "whorification." Plaintiff concedes that the word to which the question responds is opinion and is not even about her. TAC ¶ 506 n.105. The question that follows does not purport to convey information. It is a crude jibe that turns the word back on a critic in the course of a heated online argument, written by a commentator whose content the TAC itself calls "hyperbolic, vitriolic, . . . juvenile, and crass." *Id.* ¶ 18. Plaintiff, by her own description "bold, brassy, and opinionated," *id.* ¶ 131, had herself joked publicly about going "back to sex work" three months before. *Id.* ¶ 517. No reasonable reader of that exchange would have understood the tweet as a factual report that Plaintiff engaged in prostitution. It is the kind of "lusty and imaginative expression" of contempt the law does not treat as a statement of fact. *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 286 (1974).

**2. The YouTube Statement Is Substantially True on the TAC's Own Allegations**

Falsity is an element of the claim, and Plaintiff bears the burden of pleading it. *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776–77 (1986). Truth is a complete defense, and a statement is not false if it is substantially true – if its "gist" or "sting" would have the same effect on the reader as the literal truth. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516–17 (1991); *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 146 (S.D.N.Y. 2022).

The April 1 statement was that Plaintiff "has since come forward stating that she used to be a sex worker." TAC ¶ 241. The TAC itself establishes that, three months earlier, Plaintiff had publicly posted that she would "go back to sex work" because "at least then when I get fucked a lot I'll get paid well for it." *Id.* ¶ 517. To "go back" to

something is to return to it, and a public post announcing a return to sex work is a public statement that one has done sex work before. The TAC's answer is that the post was "obviously a joke." *Id.* ¶ 518. But the statement at issue did not say Plaintiff was serious. It said she had said it, and she had. The TAC's further allegation that Mr. Tarzia "did not appear to have even been aware" of the post, *id.* ¶ 520, goes to his state of mind, not to whether what he said was true. Truth is measured against the facts, not against the speaker's sources. Because the TAC pleads the very fact that makes the statement substantially true, it does not plausibly plead falsity, and the claim based on the April 1 statement and its republications fails.

#### 3. The TAC Does Not Plausibly Allege Knowing or Reckless Falsity

Because § 76-a applies, Plaintiff must ultimately prove by clear and convincing evidence that each statement was made with knowledge of its falsity or reckless disregard for the truth. *Satanic Temple*, 177 F.4th at 211. She must therefore plead facts that make that conclusion plausible. *Cf. Biro v. Condé Nast*, 807 F.3d 541, 545–46 (2d Cir. 2015). The TAC's theory is that Mr. Tarzia "invented" the claim from nothing. TAC ¶¶ 233, 524–526. That theory cannot be squared with the TAC's own account of the facts. Plaintiff had publicly posted about going back to sex work months earlier, *id.* ¶ 517; the article Mr. Tarzia published the same day described the claim as one that had "come to light over the past month," *id.* ¶ 224; and he later pointed to Plaintiff's own posts as the basis for it, *id.* ¶¶ 248–249. Where, as here, the complaint itself supplies an "obvious alternative explanation" for the defendant's statement – that he was characterizing, crudely, what Plaintiff had herself said in public – an allegation of knowing fabrication is not plausible. *Iqbal*, 556 U.S. at 682.

### C. The Remaining Counts Are the Defamation Claim Without Its Elements

Each of the other four counts seeks damages for the same commentary, and each fails for reasons that apply to all of them before any count-specific analysis begins.

First, a plaintiff may not avoid the constitutional limits on defamation liability by relabeling a claim based on speech. *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56–57

(1988). Speech on a matter of public concern cannot support liability for emotional distress because it is "outrageous" or hurtful. *Snyder v. Phelps*, 562 U.S. 443, 451–52, 458 (2011). New York law reaches the same result on its own terms: where the injury alleged flows from publication, the claim sounds in defamation, and the courts "do not recognize separate torts as additional causes of action." *Goldman v. Barrett*, 733 F. App'x 568, 570 (2d Cir. 2018) (citing *Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453, 459 (1967)); *see Bacon v. Nygard*, 140 A.D.3d 577, 578 (1st Dep't 2016); *Fleischer v. NYP Holdings, Inc.*, 104 A.D.3d 536, 538–39 (1st Dep't 2013).

Second, a speaker may not be held liable for the conduct of others who react to his speech unless the speech is directed to inciting imminent lawless action and is likely to produce it, or the speaker authorized, directed, or ratified the unlawful conduct. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927–29 (1982); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam). Speech is punishable as a threat only if it is a true threat, made at least recklessly. *Counterman v. Colorado*, 600 U.S. 66, 69, 79–82 (2023). The TAC does not allege that Mr. Tarzia threatened Plaintiff, or that he incited, directed, or authorized anyone else to do so. It alleges the opposite: that he described the harassment of Plaintiff as "not an appropriate or mature response" and warned his followers against it, which the TAC characterizes as insincere. TAC ¶¶ 178, 182, 185. A theory that a commentator is liable for what anonymous strangers do after reading his criticism, because he should have known some of them would "take it too far," *id.* ¶ 544, is precisely the theory *Claiborne Hardware* forecloses.

**1. Section 79-n**

Section 79-n provides a civil remedy against a person who "intentionally selects a person . . . for harm," causes injury, or subjects a person to conduct that would constitute harassment under Penal Law § 240.25, where the selection is made because of a belief or perception regarding a protected characteristic. N.Y. Civ. Rights Law § 79-n(2). Harassment under § 240.25 requires a course of conduct that places the victim in reasonable fear of physical injury. N.Y. Penal Law § 240.25. The statute's remedy is

limited to bias-related violence or intimidation; verbal criticism unaccompanied by threats or violence does not state a claim. *Le v. Triza Elec. Corp.*, No. 19-cv-5134 (ARR) (PK), 2020 WL 1274977, at *3 (E.D.N.Y. Mar. 16, 2020); *Karam v. County of Rensselaer*, No. 1:13-cv-01018 (MAD/DJS), 2016 WL 51252, at *18 (N.D.N.Y. Jan. 4, 2016). And because a harassment statute applied to speech must be confined to unprotected categories such as true threats, it cannot reach public commentary of the kind alleged here. *People v. Golb*, 23 N.Y.3d 455, 467 (2014); *People v. Dietze*, 75 N.Y.2d 47, 51–53 (1989).

The TAC alleges no threat or act of violence by Mr. Tarzia. It also does not plausibly allege that he selected Plaintiff because of a protected characteristic. The bias allegation is made on information and belief and lists five characteristics in the alternative. TAC ¶ 535. Everywhere else, the TAC alleges a different reason: that Mr. Tarzia criticized Plaintiff because of her article about the "Gamergate 2.0" controversy and her role at Kotaku, *id.* ¶¶ 14–16, 132, 148–166, and kept doing so because it brought him attention and subscribers, *id.* ¶¶ 17, 193, 196–199, 202–203, 234, 270–279, 394. Selecting a journalist for criticism because of what she wrote, or because criticizing her is good for business, is not bias-related selection under § 79-n. The pages of the TAC devoted to Mr. Tarzia's private views on other subjects, drawn from his conversations with a chatbot and with friends, *id.* ¶¶ 390–446, do not change the analysis. They say nothing about why he wrote what he wrote about Plaintiff, and the statute does not make a person's opinions actionable.

**2. Intentional Infliction of Emotional Distress**

An emotional-distress claim requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and New York courts have found that standard met only in the rarest of cases. *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121–22 (1993). The claim is unavailable where the conduct alleged falls within the ambit of another tort, and it may not be used to evade the requirements of a defamation claim. *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 530 n.10 (S.D.N.Y. 2013).

This count alleges no conduct by Mr. Tarzia other than his public commentary, and its injury is the conduct of third parties. TAC ¶¶ 539–548. It fails under *Howell*, under the duplication rule, and under *Snyder* and *Claiborne Hardware*.

### 3. Tortious Interference with Contract

Tortious interference with contract requires a valid contract, the defendant's knowledge of it, the defendant's intentional procurement of the third party's breach without justification, actual breach, and damages. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996). The TAC alleges no breach. It alleges that third parties complained to Kotaku's parent company about Plaintiff's appearance with a political streamer, and that Plaintiff then "agreed to resign" and had her contract "bought out." TAC ¶¶ 379–380, 558. A resignation by agreement, with the contract paid out, is the opposite of a breach. The count also fails to allege that Mr. Tarzia procured anything: the conduct alleged is his commentary amplifying another streamer's criticism, *id.* ¶¶ 375–378, and the complaints were made by others.

### 4. "Stochastic Terrorism" and Prima Facie Tort

The TAC cites no New York decision recognizing a tort of "stochastic terrorism." The only authority it offers is a default judgment entered by a Washington trial court. TAC ¶ 566 n.110. A federal court sitting in diversity applies state law as the state's highest court has declared it or would declare it, and does not create new causes of action. *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994). Recognizing a tort that imposes liability for lawful speech because of how others respond to it would also violate the First Amendment for the reasons given above.

The alternative prima facie tort theory fares no better. Prima facie tort requires that the defendant's sole motivation be "disinterested malevolence," together with specially pleaded special damages. *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 332–33 (1983); *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142–43 (1985). The TAC alleges throughout that Mr. Tarzia was motivated by attention, subscribers, and revenue, TAC ¶¶ 17, 193, 196–199, 202, 234, 270–279, 394, which defeats the claim on its face,

and its damages allegations are general categories rather than itemized special damages, *id.* ¶ 594. Prima facie tort is also unavailable where the injury flows from publication, *Freihofer*, 65 N.Y.2d at 143, and the TAC's disclaimer of any damages "from the falsity of Tarzia's statements," *id.* ¶ 564, confirms that this count seeks to impose liability on speech that Plaintiff does not even contend is false.

### D. Mr. Tarzia Is Entitled to His Fees Under Civil Rights Law § 70-a

#### 1. Section 70-a Applies Here and Supports an Award on This Motion

In an action involving public petition and participation, "costs and attorney's fees shall be recovered upon a demonstration . . . that the action . . . was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." N.Y. Civ. Rights Law § 70-a(1)(a). The award is mandatory. Like § 76-a, § 70-a defines the substantive consequences of bringing a SLAPP and does not displace any federal rule of procedure; the Second Circuit's reasoning in *Satanic Temple* applies equally to it, although that decision reserved the question. *Satanic Temple*, 177 F.4th at 211 & n.7. District courts in the Second Circuit are divided on the question, but the better-reasoned decisions apply it in diversity and award fees on a Rule 12(b)(6) dismissal without requiring a separate action. *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 182–88 (S.D.N.Y. 2024); *Harris v. Am. Accounting Ass'n*, 2021 WL 5505515, at *15 (N.D.N.Y. Nov. 24, 2021), *aff'd in part, rev'd in part*, 2023 WL 2803770 (2d Cir. Apr. 6, 2023) (summary order) (applying § 70-a(1)(a) but reversing the fee award because the claim was not wholly without a substantial basis); *see Golan v. Daily News, L.P.*, 214 A.D.3d 558, 559 (1st Dep't 2023); *Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 32 (1st Dep't 2022). *But see Exec. Park Partners LLC v. Benicci Inc.*, 2023 WL 3739093, at *7 (S.D.N.Y. May 31, 2023); *Carroll v. Trump*, 590 F. Supp. 3d 575, 583 (S.D.N.Y. 2022).

#### 2. The Action Was Commenced and Continued Without a Substantial Basis

For the reasons given in Parts IV.B and IV.C, none of the five counts has a

substantial basis in fact or law. Four of them have no basis in New York law at all: one asks the Court to invent a tort, and the others seek to impose liability for public commentary on grounds the First Amendment forbids. The fifth rests on two statements the TAC itself shows to be hyperbole and substantial truth. A complaint that does not survive Rule 12(b)(6) necessarily lacks the "substantial basis" § 70-a requires, which is a more demanding standard. *Bobulinski*, 758 F. Supp. 3d at 185–86 (quoting *Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10, 24 (1st Dep't 2024)).

**3. The Record Since Filing Shows How the Action Has Been Continued**

Section 70-a reaches an action that was "continued" without a substantial basis, and the post-filing record shows what this one has been continued for.[1] On March 24, 2026, during jurisdictional discovery, Plaintiff's counsel sent a twenty-one-page settlement proposal. ECF No. 79-1. It proposed to end the case if Mr. Tarzia would remove his posts, publish an apology stating that "he knew his statements about Ms. Mercante were false when he made them" and "that he directed harassment toward her to promote his own channel," agree "never to talk about Ms. Mercante again," and pay a sum "equivalent to what he's paid you to date" – that is, a sum measured not by any injury to Plaintiff but by Mr. Tarzia's cost of defending himself. *Id.* at 2, 20–21. The letter explained that "at a certain point our fees (recoverable under the harassment law we are suing over) will exceed your client's total assets." *Id.* at 2.

The letter also told Mr. Tarzia what would happen if he declined. Discussing his private chatbot conversations produced in discovery, it urged counsel to "[s]pare him the greater indignity of these logs becoming exhibits attached to our third amended complaint." *Id.* at 12. It suggested that the same material created "likely significant exposure for his employer." *Id.* at 8 n.14. Mr. Tarzia did not accept, and the TAC

---

[1] Federal Rule of Evidence 408 bars the use of compromise offers to prove or disprove the validity or amount of a disputed claim. It does not bar their use for another purpose, and it imposes no confidentiality. Fed. R. Evid. 408(b). The letter is cited here for what it shows about the purpose for which the action has been continued, and it is on the public docket at ECF No. 79-1.

followed. It devotes dozens of paragraphs to his chatbot conversations and private messages on subjects unrelated to Plaintiff, TAC ¶¶ 390–446, 471–487; alleges that he uses a personal chatbot account in his day job, *id.* ¶¶ 443–444; and adds allegations about his family vacation, *id.* ¶¶ 494–498. None of this bears on whether two statements made in March and April 2024 were false and defamatory. It bears on what the letter said it would.

The TAC states the purpose itself. It asks the Court to impose liability because Mr. Tarzia "has little reason to change his behavior unless made to do so by the law," and "so that Tarzia's wrongs do not go unpunished." TAC ¶¶ 591–592. Its prayer seeks an injunction under § 79-n. *Id.* Prayer ¶ 4. And the demand that Mr. Tarzia agree never to speak about Plaintiff again is a demand for exactly the relief that the First Amendment would forbid any court to grant. An action continued as leverage to obtain an apology dictated by the plaintiff, a promise of permanent silence, and a payment pegged to the defendant's legal bills is an action continued without a substantial basis in fact and law.

#### 4. Reservation of Claims Under § 70-a(1)(b) and (c)

Section 70-a also provides for compensatory damages where an action was commenced or continued "for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech," and for punitive damages where that was the sole purpose. N.Y. Civ. Rights Law § 70-a(1)(b)–(c). Those remedies are asserted by claim rather than by motion. Mr. Tarzia expressly reserves them, and the record described above is offered here for its bearing on the fee award, not as a substitute for that claim.

### E. Alternatively, California's Anti-SLAPP Statute Requires the Same Result

If the Court concludes that California law governs the anti-SLAPP question, because Mr. Tarzia is a California resident who spoke from California, *see Sarver*, 813 F.3d at 897–901, the result is the same. Each claim arises from statements "made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(3). Where, as here, a special motion to strike challenges

the legal sufficiency of the complaint, the Court applies the Rule 12(b)(6) standard. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018). A prevailing defendant "shall be entitled to recover that defendant's attorney's fees and costs." Cal. Code Civ. Proc. § 425.16(c)(1); *see Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001). The en banc Ninth Circuit recently assumed, without deciding, that the statute applies in diversity cases, leaving its precedent applying it in place. *Gopher Media LLC v. Melone*, 154 F.4th 696, 699 n.2 (9th Cir. 2025) (en banc).

**F. Dismissal Should Be with Prejudice**

Leave to amend may be denied where amendment would be futile or the plaintiff has repeatedly failed to cure deficiencies. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). This is Plaintiff's fourth complaint. It was drafted after extensive discovery, and it represents that Plaintiff has had "complete production" of Mr. Tarzia's emails, messages, and other communications concerning her. TAC ¶¶ 230–232. The defects identified above are not matters of pleading detail. They follow from what the statements say, from Plaintiff's own public posts, and from the constitutional limits on liability for speech. No amendment can cure them.

## V. CONCLUSION

The Court should dismiss the Third Amended Complaint in its entirety and with prejudice, award Mr. Tarzia his costs and attorney's fees under New York Civil Rights Law § 70-a(1)(a) or, alternatively, California Code of Civil Procedure § 425.16(c)(1), in an amount to be determined on a subsequent application, and grant such further relief as the Court deems just.

Dated: November 16, 2026

Respectfully submitted,

**SWEIGART MURDOCK, LLP**

By: /s/ *Jesse D. Franklin-Murdock*
Jesse D. Franklin-Murdock

*Attorney for Defendant Jeff Tarzia*